**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BONNY M.**[1], | : | |
| *Plaintiff*, | : | **CIVIL ACTION** |
| **v.** | : | **No. 25-3244** |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security,** | : | |
| *Defendant*. | : | |

**MEMORANDUM OPINION**

**HON. JOSÉ RAÚL ARTEAGA** **July 31, 2026**
**United States Magistrate Judge**[2]

The Commissioner of the Social Security Administration, Frank Bisignano, through an Administrative Law Judge ("ALJ"), determined that Plaintiff Bonny M. was not disabled and denied her claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and for Supplemental Security Income ("SSI") under the Act's Title XVI, 42 U.S.C. §§ 1381-1383. (Tr. 12-25.) Bonny M. seeks reversal and remand of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c), arguing that substantial evidence does not support the ALJ's determination

---

[1] Bonny M. is referred to solely by her first name and last initial in accordance with this Court's standing order. *See* Standing Order, *In re: Party Identification in Social Security Cases* (E.D. Pa. June 10, 2024), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_pty-id-ss.pdf (last visited July 24, 2026).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (*See* ECF 4.)

that she could perform sedentary work with the use of a cane for ambulation. In response, the Commissioner argues that the ALJ appropriately considered the medical records and prior administrative medical findings and that substantial evidence supports his decision. (ECF 8 at 1.)

After careful review of the record, Bonny M.'s request for review is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

Bonny M. applied for DIB and SSI in November 2021, with an alleged August 2021 disability onset date. (Tr. 12.) She was thirty-years-old at the time: a "younger person" for Social Security purposes. (Tr. 20.) *See* 20 C.F.R. §§ 404.1563(c), 416.963.4. Her claims were denied initially and upon reconsideration. (Tr. 12.) Then, she filed a written request for a hearing. (Tr. 12.) There, Bonny M. and an impartial vocational expert ("VE") testified before an ALJ. (Tr. 12; 26-47.) After the hearing, the ALJ issued a decision denying her application for benefits. (Tr. 13.)

The ALJ determined that Bonny M. had not engaged in substantial gainful activity[3] since her alleged onset date. (Tr. 15.) According to the ALJ, Bonny M. suffered from one severe impairment: complex regional pain syndrome ("CRPS"). (*Id*). The ALJ also found that Bonny M. suffered from non-severe impairments: right leg/knee pain,

---

[3] The regulations define "substantial gainful activity" as work activity that is both substantial and gainful. *See* 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). The Commissioner generally presumes that individuals have demonstrated the ability to engage in substantial gainful activity if they have earnings above a level set out in the regulations. *See* 20 C.F.R. §§ 404.1574, 404.1575, 416.974, 416.975.

with no underlying impairment; history of ureteral stones; umbilical hernia; exercise-induced asthma; elevated blood pressure readings, with no diagnosis of hypertension; lumbar spondylosis; and obesity. (*Id.)* In addition, the ALJ considered whether Bonny M. had any mental impairments which would have affected her ability to work. Noting that her application did not allege that she had any medically documented mental health impairments, the ALJ concluded that Bonny M. had none that were supported by the record, so none were considered in the ALJ's decision. (Tr. 16.) The ALJ concluded that Bonny M.'s impairments did not meet or medically equal the severity of one of the impairments listed in the regulations either when considered alone or in tandem.[4]

To determine Bonny M.'s residual functional capacity ("RFC")[5], the ALJ reviewed the available record. (Tr. 17.) He considered medical records[6] including: a Diagnostic Imaging Specialists radiology report (Tr. 289-300 (Ex. 2F)); Abington Memorial Hospital emergency department records (Tr. 301-37 (Ex. 3F); Tr. 688-723 (Ex. 10F); Tr. 867-84

[4] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. *See also* 20 C.F.R. §§ 416.925-416.926 (noting that the listed impairments in Part 404 apply to claims under Part 416).

[5] RFC is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. Id. §§ 404.1545(a)(2), 416.945(a)(2).

[6] Under the applicable regulations for claims filed after March 27, 2017, the ALJ was not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Bonny M.'s] medical sources." 20 C.F.R. § 404.1520c(a), 416.920c(a); *see Chung v. Comm'r Soc. Sec.*, No. 24-1974, 2025 WL 1065241, at *3 (3d Cir. Apr. 9, 2025).

(Ex. 12F)); office treatment records from Dr. Ray Moyer (Tr. 338-69 (Ex. 4F)); Temple University Hospital outpatient hospital records (Tr. 370-435 (Ex. 5F) and Tr. 436-603 (Ex. 6F)); Dr. James Goodyear's internal medicine consultative examination (Tr. 604-20 (Ex. 7F)); Dr. Gregory Kramer's psychological consultative examination (Tr. 621-35 (Ex. 8F)); Thomas Jefferson University Hospital emergency department and inpatient records (Tr. 885-907 (Ex. 13F); Tr. 992-1138 (Ex. 15F); Tr. 1139-1206 (Ex. 16F)); Temple Pain Medicine treatment records (Tr. 1207-1413 (Ex. 17F)); and Temple Orthopaedics treatment records. (Tr. 1414-15 (Ex. 18F).)

The ALJ weighed medical opinions and prior administrative medical findings including Bonny M.'s initial DIB eligibility determination (Tr. 51-58 (Ex. 3A)) and initial SSI eligibility determination explanation (Tr. 59-66 (Ex. 4A)), along with the reconsideration explanation for her DIB eligibility determination. (Tr. 67-75 (Ex. 5A)). In addition to Bonny M.'s subjective complaints as documented in the medical evidence, the ALJ also considered her hearing testimony (Tr. 26-47); a disability report that Bonny M. completed (Tr. 195-203 (Ex. 2E)); a third-party function report from Bonny M.'s husband (Tr. 226-36 (Ex. 6E)); and Bonny M.'s certified earnings records. (Tr. 190-91 (Ex. 7D).).

"After careful consideration of the entire record," the ALJ determined that Bonny M. had the RFC to perform sedentary work[7] with the use of a cane required. (Tr. 17.) Because the ALJ found that Bonny M. required the use of a cane, he narrowed the RFC to

[7] *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (setting forth "physical exertion requirements of work in the national economy").

include that she can only carry small objects in her free hand while walking. (*Id.*) He stated that he made his RFC determination after considering the "medical opinion(s) and prior administrative medical finding(s)," as well as Bonny M.'s symptoms to the extent that they could "reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.*) The ALJ next found that Bonny M. had no past relevant work experience. (Tr. 19.) Considering Bonny M.'s age, education, and RFC, as well as the VE's testimony, the ALJ concluded that other work existed in significant numbers in the national economy that Bonny M. could perform, such as table worker, stuffer, and patcher. (Tr. 20.) Therefore, the ALJ concluded that Bonny M. was not disabled within the meaning of the Social Security Act. (Tr. 21.)

After the Appeals Council rejected Bonny M.'s request for review (Tr. 1), she filed her appeal from the Commissioner's final decision in this court. (ECF 7 at 1.)

## II. LEGAL STANDARDS[8]

### A. The Social Security Administration's Five-Step Evaluation Process

Working through ALJs, the Commissioner follows a five-step evaluation process to determine whether a claimant is disabled under the Social Security Act. 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner determines whether the claimant: (1) is

[8] The respective regulations governing claims for DIB, which can be found at 20 C.F.R. Part 404, and claims for SSI, which can be found at 20 C.F.R. Part 416, "are, as relevant here, not materially different." *Sims v. Apfel*, 530 U.S. 103, 107 n.1 (2000). Because the test for determining whether a person is disabled "is the same" for either class of benefits, the Court may consider case law developed under either provision in reaching a decision. *See Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

engaged in substantial gainful activity; (2) has a severe impairment[9]; (3) has impairment(s) that meet or medically equal a listed impairment; (4) has the capacity to do past relevant work, considering their RFC; and (5) is able to do any other work, considering their RFC, age, education, and work experience. *Id.*

The claimant bears the burden of proof on all steps, except step five. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010); *see also Zirnsak v. Colvin*, 777 F.3d 607, 611-12 (3d Cir. 2014) ("[D]uring steps two through four of the inquiry, the claimant *always* bears the burden . . . by a preponderance of the evidence . . . .") (emphasis added). At step five, "the Commissioner bears the burden of establishing the existence of jobs in the national economy that an individual with the claimant's impairments is capable of performing." *Id*. at 616; *see also Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001) (explaining that the Commissioner must account for the claimant's age, education, work experience, and RFC when establishing the availability of work the claimant can perform).

To make an RFC determination, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairment. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). The ALJ also considers "any statements about what [a claimant] can still do that have been provided by medical sources" and "descriptions and observations of [the claimant's] limitations from [their] impairments" provided by the

[9] A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

claimant or "family, neighbors, friends, or other persons." *Id.* §§ 404.1545(a)(3), 416.945(a)(3).

At step five, "the burden of production shifts to the Commissioner, who must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with their medical impairments, age, education, past work experience, and RFC." *Fargnoli*, 247 F.3d at 39 (citation modified). ALJs may use VEs' testimony to inform and support their determination regarding whether any jobs exist which the claimant could perform. *Boone v. Barnhart*, 353 F.3d 203, 205-06 (3d Cir. 2003). An ALJ must resolve any inconsistencies between a VE's testimony and other sources of information. *Bachan v. Berryhill*, No. 17-4665, 2018 WL 6715892 at *2 (E.D. Pa. Dec. 20, 2018); *see also Sanchez v. Dudek*, No. 24-240, 2025 WL 924046 at *1 (M.D. Pa. Mar. 26, 2025) (holding it is "axiomatic that an ALJ must address and resolve any material ambiguities and inconsistencies between vocational expert testimony . . . and the ALJ's decision, or remand may be appropriate.").

**B. Substantial Evidence and the ALJ's Burden of Articulation**

The limited question before the Court on appeal is *not* whether Bonny M. was disabled. An ALJ's findings of fact are reviewed under the deferential "substantial evidence" standard. *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019); *see also* 42 U.S.C. § 405(g). So, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's finding that Bonny M. was not disabled and whether the Commissioner, through the ALJ, correctly applied the relevant law. *See* 42 U.S.C. § 405(g) (stating that factual findings supported by substantial evidence "shall be

conclusive"). Any legal issues the ALJ decides are subject to "plenary review." *See Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008).

The threshold for substantial evidence "is not high." *Biestek*, 587 U.S. at 103. It "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation modified). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

"The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Where substantial evidence supports the Commissioner, courts may not "re-weigh the evidence or impose their own factual determinations." *Id.* at 359; *see also Fargnoli*, 247 F.3d at 38 (noting that reviewing courts must accept the ALJ's factual findings where there is substantial supporting evidence, even if they "would have decided the factual inquiry differently."). "The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009); *see also Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (holding that an "ALJ is entitled to weigh all evidence in making its finding," even where there is record evidence "suggesting a contrary conclusion").

When evaluating medical opinions and prior administrative medical findings, ALJs must "articulate how [they] considered" them and "how persuasive" they are. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). Of the persuasiveness factors, ALJs "must always discuss the two most important factors: supportability and consistency." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). Supportability refers to the degree to which "a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Nolf v. Comm'r of Soc. Sec.,* No. 22-368, 2023 WL 8437872 at *1 n.1 (W.D. Pa. Dec. 4, 2023); *see* 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). However, an ALJ "need not reiterate the magic words 'support' and 'consistent' for each" medical source assessed in the determination. *Zaborowski*, 115 F.4th at 639. The ALJ need only "weave supportability and consistency throughout [the] analysis of which doctors were persuasive." *Id.*[10]

Courts defer to the ALJ's assessment of the evidence so long as the ALJ "explain[s] what evidence he found not credible and why." *Zirnsak*, 777 F.3d at 612 (citation omitted). The ALJ's opinion need only include "sufficient development of the record and

---

[10] Although Bonny M. seeks to discredit the sufficiency of the ALJ's supportability and consistency findings, her briefs do not refer to *Zaborowski*, a decision which binds this Court's consideration of whether the ALJ adequately addressed these factors.

Plaintiff's counsel is reminded of her obligation to provide the Court with case citations that are up to date in light of ever-evolving law, even where such authority might be adverse. *See* Pa. R.P.C. 3.3(a)(2) (Candor Toward the Tribunal); *see also* Pa. R.P.C. 1.1 (Competence), cmt. 8 ("To maintain the requisite knowledge and skill, a lawyer should keep abreast of changes in the law and its practice . . . .").

explanation of findings to permit meaningful review" and ALJs are not required "to use particular language or adhere to a particular format in conducting [their] analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000)); *see also* 42 U.S.C. §405(b)(1) (requiring an ALJ to state the "reason or reasons upon which [a denial of benefits] is based."). An ALJ must explain the reasoning underlying his or her decision but is not required to discuss every piece of evidence in the record. *See Zaborowski*, 115 F.4th at 639. The Social Security Act "requires administrative judges to explain only the dispositive reasons for their decisions, not everything else that they considered." *Id.* Said otherwise, ALJs "must always explain the reasons for their decisions. But that does not mean always explaining all the factors." *Id.* To decide whether the ALJ sufficiently developed the record, the Court reads the ALJ's decision "as a whole." *Jones,* 364 F.3d at 505*; see also Fargnoli*, 247 F.3d at 42 (noting that an ALJ need not reference every relevant piece of evidence).

Following review of the entire record on appeal, the Court can enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . ., with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Bonny M. bears the burden to explain how any "error to which [s]he points could have made any difference" in the ALJ's determination. *Shinseki v. Sanders*, 556 U.S. 396, 409, 413 (2009). Remand is not required if it would not affect the outcome of the case. *Rutherford*, 399 F.3d at 553.

## III. DISCUSSION

### A. Substantial Evidence Supports the ALJ's Consideration of Bonny M.'s Physical and Mental Limitations.

Bonny M. maintains that the ALJ erred by: (1) not finding greater physical limitations based on her subjective reports and the record medical evidence (ECF 7 at 4-11); and (2) ignoring her chronic pain symptoms in assessing her non-exertional (*i.e.*, mental) limitations. (*Id.* at 12.) She argues that her testimony alone establishes her disability. (*Id.* at 25-29.) She also complains that the ALJ's failure to establish a "logical bridge" between the medical evidence and her RFC requires remand.[11] The

[11] Although Bonny M. says that it is "the well-settled law of this Circuit that an ALJ must build an accurate and logical bridge between the evidence and her findings," (ECF 7 at 21 (citation modified)), she cites no *binding* precedent from the Third Circuit which uses the "logical bridge" test to judge the burden of articulation in a Social Security appeal. Instead, in asking the Court to find that the ALJ was required to establish a "logical bridge" for his decision to withstand appeal, she cites only non-precedential cases. (ECF 7 at 5-16.) *See Jones v. Comm'r of Soc. Sec.*, 297 F. App'x 117, 120 (3d Cir. 2008); *Nolasco* v. *Kijakazi*, No. 21-4119, 2023 WL 2773532 *12 (E.D. Pa. Apr. 3, 2023); *Kilgore v. Kijakazi*, No. 20, 2021 WL 5759034 *7-8 (M.D. Pa. Dec. 3, 2021). *Jones* makes no mention of this test at the cited page. 297 F. App'x at 120. *Nolasco* imports the logical bridge" standard from a non-precedential Western District of Pennsylvania decision that cites a Seventh Circuit decision. 2023 WL 2773532, at *12 (citing *Haut v. Colvin*, No. 15-511, 2016 WL 3962020, at *11 (W.D. Pa. Jul. 19, 2016) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996))). And *Kilgore*, 2021 WL 5759034, at *8, cites no case which clearly establishes the "logical bridge" or "logical nexus" test that it applies, instead citing the Third Circuit's 1981 decision in *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981), which required only that an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."

"Of course, the decisions of other circuits, while persuasive, are not binding on the district courts in this Circuit." *United States v. Maury*, 695 F.3d 227, 259 n.2 (3d Cir. 2012). And "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same [district] judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (citation omitted). To

Commissioner counters that substantial evidence supports the ALJ's RFC assessment for a reduced range of sedentary work and that the ALJ reasonably found that Bonny M. had not proven that she was disabled. (ECF 8 at 1, 3-7.)

Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a). Jobs in this category are defined as one which involves sitting, although "a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* Jobs are sedentary if walking and standing are required occasionally. *Id. See also* SSR 96-9p, 1996 WL 374185 (describing "occasionally" as occurring from very little to one-third of the time.) Social Security Ruling ("SSR") 96-9p explains that approximately two hours of standing or walking are required of sedentary jobs. SSR 96-9p, 1996 WL 374185.

Because the record provides more than a "mere scintilla" of support for the ALJ's RFC determination that Bonny M. could perform sedentary work that allows for the use of a cane for ambulation, the ALJ's RFC determination meets the substantial evidence standard, and remand is not required for further consideration of Bonny M.'s physical or mental limitations. *Rutherford*, 399 F.3d at 552; *Biestek*, 587 U.S. at 102.

**1. Physical Limitations**

Bonny M. asserts that the ALJ failed to appropriately credit the medical evidence as it relates to physical limitations resulting from her CRPS and "lumbar disorder."

---

the extent that *Cotter* still controls, the reasoning set forth in the ALJ's decision suffices to meet *Cotter's* bar as is further explained in this Opinion.

(ECF 7 at 5.) Specifically, she disputes the ALJ's finding that she would be able to walk or stand for a total of two hours per day. (*Id.*) Bonny M. argues that her subjective reports and testimony (Tr. 26-47), the medical opinions of consultative examiner Dr. Goodyear (Tr. 604-20), her physical therapy records (Tr. 908-91), and her pain management specialist (Tr. 1207-1413) support greater limitations in her ability to work than the ALJ determined and required a finding of disability. (ECF 7 at 5.)

To begin, Bonny M. argues that her testimony—"if credited as true"—provided a sufficient basis for a finding that she was disabled. (*Id.* at 25-29.) Specifically, she points to her testimony that she: has difficulty rising from a seated to standing position (Tr. 34), cannot stand and walk longer than for five minutes (Tr. 35), experiences cyclical pain (*id.*), experiences pain when carrying items (*id.*), and has difficulty sitting. (Tr. 39, 40, 42.); (ECF 7 at 26-27.)

While Bonny M.'s testimony about her subjective complaints is relevant, the ALJ was *not* required to simply accept what she said without question. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) ("Your symptoms . . . will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence."). "Although any statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." *Chandler*, 667 F.3d at 363 (citation modified). "[D]isability may not be established on the basis of an individual's statement of symptoms alone." SSR 03-2p, 2003 WL 22399117. "Credibility determinations as to a claimant's testimony regarding

pain and other subjective complaints are for the ALJ to make." *Malloy*, 306 F. App'x at 765.

The ALJ's decision, supported by citations to evidence, shows that he properly weighed Bonny M.'s testimony and subjective symptom reports in the context of the objective medical evidence. (*See* Tr. 17-19). He noted Bonny M.'s testimony that "she has bad pain days and excruciating pain days," and acknowledged that she explained that "[h]er worst days happen 3 to 5 days per week." (Tr. 17.) He acknowledged her testimony that "[s]tanding is more painful than walking" and that "on a very bad day, she is unable to walk farther than f[ro]m her bed to her bedroom." (Tr. 18.) The ALJ referenced her subjective reports that: she has difficulty standing up from a seated position; she cannot stand or walk for a few minutes at a time, with great pain when doing so; she can walk with less pain than standing; she uses a cane at all times for balance, and does not like using crutches; she estimates that she could lift up to eight pounds multiple times per day; and that she must sit and/or take multiple breaks when trying to complete household tasks including cooking and doing laundry. (Tr. 17-18.) Further, the ALJ stated that while he would not articulate third-party reports, that were "inherently neither valuable nor persuasive," he had read and considered her husband's statements regarding her abilities. (Tr. 19 (citing Tr. 226-36).)

Bonny M. has not shown that the record evidence required the ALJ to credit her subjective complaints as true. Rather, substantial evidence and adequate explanation supports the ALJ's conclusion that her "statements concerning the intensity, persistence

and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." (Tr. 18.)

Bonny M. also argues that the record medical evidence supports greater limitations in her ability to work than what the ALJ found after his review of the record. (ECF 7 at 5, 7.) She asserts that evidence regarding her CRPS supported greater functional limitations than the ALJ assigned in her RFC. (*Id.*) To the contrary, the ALJ gave Bonny M. the benefit of the doubt regarding her CRPS diagnosis. He wrote, "[w]hile it is not at all clear that [Bonny M.] meets all the diagnostic findings set forth in SSR 03-2p, I will assume that she actually has CRPS since the record shows she has been getting treated for it, including receiving sympathetic nerve blocks." (Tr. 18 (citing Tr. 381, 464, 468).) *See* SSR 03-2p, 2003 WL 22399117 (setting forth the guidelines for evaluating disability claims involving CRPS). Bonny M. takes issue with the ALJ's reference to her "normal" hand and arm functions, explaining that her CRPS is not present in her upper extremities. (ECF 7 at 7.) However, as sedentary work requires the use of an individual's hands and arms for "occasional[] lifting and carrying," the ALJ appropriately considered these functions along with the rest of the medical evidence. 20 C.F.R. §§ 404.1567(a), 416.967(a).

Bonny M. additionally contends that the ALJ failed to properly evaluate her back or lumbar impairment. She complains that the ALJ found her "lumbar disorder . . . not severe in one sentence." (ECF 7 at 4.) She argues that her back pain is a functional work limitation that the ALJ failed to consider when making his determination. (*Id.* at 10-11.) However, the ALJ explained that Bonny M.'s "bilateral spondylosis was an incidental finding, made very recently, for which she has not yet had any treatment." (Tr. 15 (citing

Tr. 1415).) The ALJ also referenced the consultative examiner's findings that Bonny M. had "no scoliosis, kyphosis, or abnormality in the thoracic spine. SLR testing was negative bilaterally, both supine and seated with no pain produced. No evident joint deformity was observed." (Tr. 18 (citing Tr. 607).) There was no objective medical evidence to support Bonny M.'s subjective claims of back pain, so the ALJ did not err when weighing her complaints of back pain in determining her RFC. *Rutherford*, 399 F.3d at 554.

Bonny M. next argues that the ALJ should have afforded more weight to Dr. Goodyear's medical opinions. (Tr. 604-16.) Dr. Goodyear performed a consultative medical examination and documented his findings, including that Bonny M. had an "unsteady" gait, with a loss of motion in her knee, low back, and hips. (Tr. 606, 615, 616.) Dr. Goodyear opined that Bonny M. would be able to walk for a total of thirty minutes to one hour *and* stand for one to two hours during an eight-hour workday. (Tr. 610.) The ALJ discussed Dr. Goodyear's findings before deciding that his opinion was only "partially persuasive." (Tr. 19.) He accepted Dr. Goodyear's opinion as to Bonny M.'s leg and back function, including that she would be able to stand and walk for up to three hours a day. (*Id.*) To Bonny M.'s benefit, the ALJ determined that Dr. Goodyear had "overstate[d] how much [Bonny M.] can lift and carry." (*Id.*) The ALJ recognized that during Dr. Goodyear's examination, Bonny M. did not request assistance changing but did need assistance getting on and off the exam table. Additionally, she was able to "rise from [a] chair slowly, but independently." (Tr. 607.) While Bonny M. had reported knee pain during her examination, Dr. Goodyear had only reported that there was a "mild

tenderness" in her leg, but "her joints are otherwise stable and nontender," and that "no trigger points were evident." (*Id.*) The ALJ noted that Dr. Goodyear also had not found any physical back abnormalities that would have caused Bonny M. pain, as he indicated that she had no joint or spinal deformities. (Tr. 18 (citing Tr. 607).)

Bonny M. complains that the "ALJ brushed past a significant portion of Dr. Goodyear's opinion regarding [her] loss of balance from her CRPS." (ECF 7 at 5.) The ALJ noted that Dr. Goodyear had reported that Bonny M.'s gait was slow with a cane, and without the use of her cane, her gait was unsteady. (Tr. 18 (citing Tr. 607).) To Bonny M.'s benefit, the ALJ found that Dr. Goodyear had not given "adequate consideration to [Bonny M.'s] reliance on a cane when walking." (Tr. 19.) However, the ALJ also noted discrepancies among medical professionals' reports about her use of a cane. The ALJ noted record evidence that treating providers had described Bonny M.'s gait as "antalgic" (Tr. 18 (citing Tr. 383, 466, 557, 1211, 1218, 1226, 1244, 1270, and 1293)) but explained that "multiple other providers" had described her gait as "steady or normal" (Tr. 702, 872, 999, 1000, 1112, 1117), even without the use of any assistive device. (Tr. 1113, 1118.) Considering all the conflicting medical evidence regarding Bonny M.'s balance, the ALJ appropriately found that she "cannot perform prolonged, uninterrupted walking and standing," and that those findings are *consistent* with the medical findings. (Tr. 19.)

Bonny M. next complains that the "ALJ never once mentioned the treating pain management [specialist]'s assessment regarding [her] 'chronic pain.'" (ECF 7 at 10 (citing Tr. 1207-1413).) She maintains that the ALJ ignored the specialist's opinion "that she should not work until her chronic pain symptoms improved." (ECF 7 at 10.) However,

as the Commissioner points out (ECF 8 at 7, n.3), she inaccurately characterizes the record. The cited September 21, 2021 assessment is included in a pain management specialist's note (submitted after the hearing but included in the ALJ's exhibit list). (*See* Tr. 25.) Addressed "to whom it may concern," the note explains that "[a]s part of [Bonny M.'s] treatment, she will be undergoing a procedure *in the near future*. I ask that she be excused from work until her condition improves *after this procedure*." (Tr. 1390.) (emphasis added, capitalization omitted). The referenced anticipated procedure, a sympathetic nerve block, was intended to relieve Bonny M.'s pain. The record shows that she underwent that procedure on November 1, 2021 (*see* Tr. 464-468) and the ALJ acknowledged the procedure. (Tr. 18 (citing Ex. 6F/29 (Tr. 464) and 6F/33 (Tr. 468).) Although Bonny M. had a subsequent sympathetic nerve block on February 5, 2022 (Tr. 381), which the ALJ recognized (Tr. 18 (citing Ex. 5F/12 (Tr. 281)), there is no other note or other record evidence opining that Bonny M. should continue to be excused from work *after* she received and recovered from the first sympathetic nerve block.[12] Substantial evidence supports the ALJ's consideration of the pain management specialist's "opinion" regarding Bonny M.'s ability to work.

Moreover, the ALJ adequately considered and articulated the information that he found compelling in Bonny M.'s pain management records, referring to them five times in his decision. (Tr. 16-19.) He noted that Bonny M. had a "mild or benign" lumbar spinal

---

[12] Indeed, a visit note from between the administration of the first and second nerve blocks noted "[g]reater than 80% pain relief after the last sympathetic block on 11/1/2021." (Tr. 381.)

x-ray from her pain management clinic (Tr. 18 (citing Tr. 1410)) and that Bonny M. had reported to her pain management provider that she experienced pain provoked by walking, standing, or physical activity, for which she received the sympathetic nerve blocks. (Tr. 18 (citing Tr. 1240).) Nevertheless, as the ALJ appropriately noted (Tr. 15), "[p]ain is considered a symptom, not an impairment." *Swarrow v. Colvin*, No. 13-1060, 2014 WL 3420429 at *11 (W.D. Pa., July 14, 2014). Ultimately, after considering Bonny M.'s pain management records in the context of the entire record, the ALJ determined that her reported symptoms from CRPS were not fully supported or consistent with the record medical evidence. (Tr. 18.) Bonny M. has not shown that remand is required based on the ALJ's treatment of her pain management records.

Finally, Bonny M. asserts that the ALJ did not adequately consider records from three months of physical therapy that she completed. (ECF 7 at 9-10.) She maintains that the physical therapy records "undisputabl[y] illustrate that [she] does not have the activity tolerance to maintain employment." (*Id.* at 10.) An ALJ must review and evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c), 416.927(c); *see Fargnoli*, 247 F.3d at 42. However, Bonny M.'s physical therapy records are from prior to her alleged onset date and are consistent with the other medical evidence that the ALJ discussed. *Gartland v. Colvin*, No. 13-2668, 2015 WL 5695311, at *21 (M.D. Pa. Sept. 28, 2015) ("An ALJ is not obligated [to] find evidence prior to the onset date to be relevant or probative."). The ALJ is not required to comment on or reference every treatment note. *See Hur v. Barnhart,* 94 F. App'x 130, 133 (3d Cir. 2004) (explaining that an ALJ is not required to discuss "every tidbit of evidence"); *Fargnoli*, 247 F.3d at 41-42 ("[W]e do not expect the ALJ to make

reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records.”).

Bonny M. bears the burden to prove her disability within the meaning of the Social Security Act and, on appeal, how any error that she points to could have affected the outcome of her disability claim. *Shinseki*, 556 U.S. at 413. Upon review, she has not shown that the ALJ’s treatment of her physical therapy records or any other record evidence was an error that requires remand for further consideration of her physical limitations.

**2. Mental Limitations**

Bonny M. also argues that the ALJ failed to appropriately consider the effects of pain on her mental functioning, which resulted in harmful legal error because the ALJ’s RFC determination did not include—and, in her view, should have included—mental limitations. (ECF 7 at 12.) Bonny M. asserts that “extreme pain” from her CRPS “generates specific mental functional restrictions including limitations in her ability to interact with others, pay attention, concentrat[e]” and complete tasks. (*Id.*) She contends that these limitations were “confirmed by the mental consultative examination arranged for by the Agency,” (*id.* (citing Tr. 623-24)), and that “the ALJ ignored the non-exertional component of [her] chronic pain . . . .” (*Id.*)

Bonny M. argues that “utilization of the [Psychiatric Review Technique (“PRT”)] is absolutely mandatory for all Agency adjudicators” and complains that the ALJ’s PRT analysis was inadequate. (ECF 7 at 12.) While an ALJ is tasked with assessing both physical and mental attributes of a claimant in determining the claimant’s impairments to appropriately determine his or her RFC, 20 C.F.R. §§ 404.1545(a), 416.945(a), the PRT

is only used in certain circumstances. *See* 20 C.F.R. § 404.1520a(a), 416.920a(a). Bonny M. points to no authority which would require CRPS to be treated as a mental impairment and, as the ALJ explained, she did not claim that she had mental impairments that affected her ability to work in her benefits application. (Tr. 16 (citing Tr. 195-203).) As a result, the ALJ was not required to use the PRT on top of the basic five-step disability analysis to evaluate the severity of any mental impairment. 20 C.F.R. § 404.1520a(a), 416.920a(a); *see Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019) ("When . . . mental impairments are at issue, additional inquiries are layered on top of the basic five-step disability analysis."). Even then, the analysis of a claimant's mental impairments at steps two and three does not require the inclusion of specific language in the RFC, so long as the results are adequately conveyed. *Id.* at 209–10.

In determining Bonny M.'s RFC, the ALJ reviewed evidence regarding her mental abilities. He explained that, on one occasion, she had noted a history of special education for a learning disability as a child. (Tr. 16 (citing Tr. 631).) He reviewed evidence from state agency psychologist Michelle Bane Tiller, Psy. D., explaining that she "found some moderate limitations" but they were "not supported by mental status exams, clinical findings or other evidence" in the record. (Tr. 19.) As a result, Dr. Tiller's findings were "not persuasive." In addition, the ALJ recognized that psychological consultative examiner Dr. Kramer found that, while Bonny M. did have some mild impairment of concentration, he did not diagnose any mental health impairment. (Tr. 16 (citing Tr. 621-35).) The ALJ continued, "In fact, the record does not reflect any diagnosis of any mental health issues by *any* provider." (Tr. 16.) (emphasis added).

Bonny M. has not shown that her pain caused non-exertional limitations that should have been, but were not, included in the ALJ's determination of her RFC. Remand is not required for further consideration of any mental limitations.

### B. The ALJ Properly Relied on the VE's Testimony in the Step Five Determination.

Finally, Bonny M. argues that relief is due because the ALJ's hypothetical to the VE failed to reflect all of her impairments. (ECF 7 at 11.) The Commissioner did not directly respond to this argument. (*See* ECF 8.) The ALJ asked the VE about a hypothetical individual with limitations equivalent to the credibly established limitations set forth in Bonny M.'s RFC: "[C]onsider a hypothetical younger individual with a 12th grade education. Assume that individual can perform the exertional demands of sedentary work, requires a cane for ambulation, but can carry small objects in the free hand. Would there be jobs such a person could do?" (Tr. 46.) The VE answered yes. (*Id.*)

Bonny M. asserts that the ALJ's hypothetical was error because it did not reflect treatment records documenting her "inability to squat." (ECF 7 at 11 (citing Tr. 606, 616).) Because substantial evidence supports the ALJ's findings—and therefore his RFC determination—his hypothetical to the VE was not required to include additional restrictions—including restrictions on squatting—that he reasonably found to be unsubstantiated. *See Rutherford*, 399 F.3d at 554-55 ("We do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant . . . . Instead . . . the hypotheticals posed must accurately portray the claimant's impairments and . . . the expert must be given an opportunity to evaluate those impairments as contained in the

record.") (emphasis added). As substantial evidence supported the ALJ's RFC determination, the ALJ's failure to propose other hypothetical limitations to the VE—like an inability to squat—was not required for the Commissioner to sustain his burden at step 5. *See id.* at 554 n.8 ("[O]bjections to the adequacy of hypothetical questions posed to a [VE] often boil down to attacks on the RFC assessment itself.").

Bonny M. also complains that the ALJ did not appropriately address the VE's testimony regarding her "off-task[13]" behavior. (ECF 7 at 18-19.) After the ALJ questioned the VE about a hypothetical individual with limitations equivalent to the limitations in Bonny M.'s RFC, the VE testified that such a hypothetical individual would be able to perform jobs such as table worker, stuffer, and patcher. (Tr. 46.) The VE then testified that the customary employer tolerance for being off task would be "fifteen percent *or more.*" (*Id.*) (emphasis added). Bonny M.'s attorney then asked the VE: "[I]sn't it true that if a cane is required for balance, then at *any time the claimant has to stand*, they become a one-armed person, and therefore would be off-task?" The VE replied: "That's true . . . . the work becomes preclusive." (Tr. 47 (emphasis added).) Bonny M. points to this portion of the VE's testimony as evidence that she is precluded from work. (ECF 7 at 18-19.)

---

[13] The "off-task" language derives from SSR 96-9p, which requires an ALJ to assess a claimant's ability to work on a "sustained basis," meaning for eight hours a day, for five days a week. A VE's testimony establishes general standards for being off task when an ALJ asks about customary employer tolerance based on the claimant's limitations. Standards vary between different jobs, but employer tolerance generally allows an individual to be off task for 10-20% of the workday. *See* SSR 96-9p, 1996 WL 374185.

When, like here, an ALJ formulates an RFC that does not include off-task behavior, the ALJ is not required to address how off-task behavior would affect the claimant's employment, even if the VE gave testimony regarding off-task behavior. *Maxson v. Kijakazi*, No. 21-214, 2022 WL 4473612 at *2 n.3 (M.D. Pa. Sep. 26, 2022); *see also O'Neill v. Comm'r of Soc. Sec.*, No. 18-0698, 2019 WL 413539 at *8 (D.N.J. Jan. 31, 2019) (noting that a VE's testimony regarding off-task time is irrelevant when nothing in the record suggests that the VE's proffered jobs have specific off-task constraints). Further, while the VE did respond that someone who required a cane for balance would be off task any time that they were required to *stand*, the ALJ determined that Bonny M. had the RFC to perform sedentary work, *i.e.*, work that does not require standing at all times. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) ("Jobs are sedentary if walking and standing are required *occasionally* and other sedentary criteria are met.") (emphasis added). As substantial evidence exists to support the RFC determination without an additional limitation for off-task time, the ALJ did not err in crediting the VE's testimony.

Substantial evidence supports the ALJ's RFC determination without additional limitations regarding off-task time, so the ALJ properly determined that Bonny M.'s usage of a cane was not work-preclusive, and remand is not required for further consideration of whether the Commissioner met his burden at Step Five. (Tr. 17).

## IV. CONCLUSION

Substantial evidence is a "low threshold." *Zaborowski*, 115 F. 4th at 640. Upon review of the record, Bonny M.'s Brief, the Commissioner's Response, and Bonny M.'s

Reply,[14] substantial evidence—"such relevant evidence as a reasonable mind might accept as adequate"—exists to support the ALJ's RFC determination and his conclusion that Bonny M. was not disabled. *Biestek*, 587 U.S. at 103. Because Bonny M. has not shown that any of her arguments on appeal would have changed the outcome of her case under the governing regulations, remand for further consideration is not required. *Rutherford*, 399 F.3d at 553. Her request for review is **DENIED,** and the Commissioner's final decision is **AFFIRMED**.

An appropriate Order follows.

---

[14] In her Reply, Bonny M. argues only that remand is appropriate because the Commissioner failed to respond to her arguments consistent with the Eastern District of Pennsylvania's June 26, 2025 Procedural Order. (*See* ECF 9.) She notes that she "argued" this issue in other recent reply briefs filed in this District and in the Middle District of Pennsylvania, but she does not say whether she was granted remand based on this argument in any of the cited cases. (*Id.*)

In *William R. v. Dudek*, No. 24-4765, 2025 WL 1738663, at *5 n.2 (E.D. Pa. June 23, 25), the only Eastern District of Pennsylvania case she cites, the court declined to consider the plaintiff's reply because it found that remand was warranted on the merits. While remand was granted in the Middle District cases that she cites, a review of the opinions issued in those cases shows that remand was not granted based on this issue. *See Hafner v. Dudek*, No. 24-1892, ECF 23 at 1 (M.D. Pa. May 26, 2026) (remanding because the ALJ "failed to provide any discussion of the combined effect of obesity in assessing Hafner's [RFC]"); *Nellis v. O'Malley,* No. 24-1849, ECF 17 at 3-4 (M.D. Pa. Mar. 19, 2026) (remanding where the ALJ failed to adequately explain a narrow aspect of the RFC finding).

The law favors the resolution of disputes on their merits. *See, e.g.*, *Marshall v. Sielaff*, 492 F.2d 917, 918 (3d Cir. 1974) (recognizing "the policy of law which favors disposition of litigation on its merits"). As Bonny M. explains, "[t]his is not a pinball game." (ECF 9 at 2.) Because she has not shown that her appeal has any merit, the Court declines to remand solely based on this argument.